# United States Court of Appeals for the Federal Circuit

2007-1184

AKIRA AKAZAWA and PALM CREST, INC.,

Plaintiffs-Appellants,

v.

LINK NEW TECHNOLOGY INTERNATIONAL, INC.,

Defendant-Appellee.

R. Joseph Trojan, Trojan Law Offices, of Beverly Hills, California, argued for plaintiffs-appellants. Of counsel was Dylan C. Dang.

Michael D. Paul, Gunn & Lee, P.C., of San Antonio, Texas, argued for defendant-appellee. Of counsel was Ted D. Lee. On the brief was Tom S. Chun, Law Office of Tom S. Chun, of Irvine, California.

Appealed from: United States District Court for the Central District of California

Judge James V. Selna

# United States Court of Appeals for the Federal Circuit

2007-1184


AKIRA AKAZAWA and PALM CREST, INC.,

Plaintiffs-Appellants,

v.

LINK NEW TECHNOLOGY INTERNATIONAL, INC.,

Defendant-Appellee.


Appeal from the United States District Court for the Central District of California in case no. 8:03-CV-01474, Judge James V. Selna.

_____

DECIDED: March 31, 2008

_____


Before NEWMAN, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and LINN, <u>Circuit Judge</u>.

ARCHER, <u>Senior Circuit Judge</u>.

Akira Akazawa ("Akira"[1]) and Palm Crest, Inc. (collectively "the appellants") appeal the United States District Court for the Central District of California's grant of Link New Technology International, Inc.'s ("Link") motion for summary judgment based on lack of standing. <u>Akira Akazawa v. Link New Tech. Int'l</u>, No. SACV 03-1474 (C.D. Cal. Oct. 26, 2006). Because issues of Japanese intestacy law must be resolved by the district court in order to determine whether Akira owned U.S. Patent No. 5,615,716 ("the

---

[1]     We refer to the members of the Akazawa family by their first names to avoid any potential confusion.

'716 patent"), and therefore possessed standing to bring the present suit, we vacate the district court's grant of summary judgment and remand for further proceedings.

I

Yasumasa Akazawa ("Yasumasa") is the only named inventor on the '716 patent, and he owned the '716 patent at the time of his death on March 25, 2001. Yasumasa did not have an executed will when he died. Thus, under Japanese law Hitomi Akazawa ("Hitomi"), Yuki Akazawa ("Yuki"), and Fumi Akazawa ("Fumi"), his wife and daughters respectively, are Yasumasa's only heirs. Yuki and Fumi assigned their interest in the '716 patent to Hitomi in an "Inheritance Agreement." Hitomi then executed an assignment transferring all rights in the '716 patent to Akira.

On October 10, 2003, the appellants[2] filed suit against Link alleging infringement of the '716 patent. Link moved for summary judgment on the basis that Akira did not have standing to file the infringement suit. The district court opined that "Japanese law may determine who the '716 patent could be transferred to upon Yasumasa's death, but the Patent Act determines the manner by which the assignment must be made." Id. at 5. It concluded that "when Yasumasa died, title to the '716 patent was held by his estate until properly assigned in writing by the legal representative of the estate" and that it was Akira's burden "to prove that [a writing transferring the '716 patent from Yasumasa's estate to his heirs] exists or that some other chain of title gives Akira ownership of the '716 patent." Id. at 8-9. The district court therefore held that Akira had not met his burden and granted Link's motion for summary judgment.

The appellants appeal, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

---

[2] Appellant Palm Crest, Inc. claims no ownership right in the '716 patent.

II

Whether a party has standing to sue is a question of law that we review de novo. See Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1376 (Fed. Cir. 2000).

The parties focus on the interplay between 35 U.S.C. § 261 and Japanese law, as they did at the district court. Section 261 states that "[a]pplications for patent, patents, or any interests therein, shall be assignable in law by an instrument in writing . . . ." 35 U.S.C. § 261. Link argues that this provision mandates a writing where there is a transfer upon death in order for there to be a proper assignment between two entities. According to Link, any conflict between United States patent law and Japanese intestacy law must be resolved in favor of United States law, because "[f]oreign law has no place in the determination of rights and responsibilities under the [P]atent Act." Thus, in Link's view, Akira does not own the '716 patent because there was never a writing transferring the '716 patent from the estate of Yasumasa to Hitomi, Yuki, and Fumi, the inheritance agreement between mother and daughters and the assignment between Hitomi and Akira notwithstanding.

The appellants, on the other hand, argue that under Japanese intestacy law any property owned by Yasumasa transferred immediately to his heirs—Hitomi, Yuki, and Fumi. See Minpō, art. 882, 887, 890, 896 (Japan), translated in Hiroshi Oda & Sian Stickings, Basic Japanese Laws (1997).[3] In other words, a writing transferring the '716

---

[3] Japanese Civil Code Article 882 states "[s]uccession commences by reason of death." Id. at art. 882. Article 890 explains that the spouse of the decedent "becomes in every case, a successor. In the case where any person is to become a successor in according with the provisions of Articles 887 [identifying a decedent's child as a successor] and 889 [(not relevant to this case)] the spouse shall rank equally with such person." Id. at art. 890. Finally, Article 896 states "[a] successor succeeds, as

patent from Yasumasa's estate to Hitomi, Yuki, and Fumi was not needed, because by operation of Japanese law, Hitomi, Yuki, and Fumi owned the '716 patent immediately upon Yasumasa's death. Indeed, under the appellants' argument, any such writing purporting to transfer the '716 patent from Yasumasa's estate would be a nullity, because the estate never owned the patent.

We conclude that the district court's focus solely on section 261 was erroneous. Section 154 of Title 35 states that "[e]very patent shall contain a short title of the invention and <u>a grant to the patentee, his heirs or assigns</u>, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States . . . ." 35 U.S.C. § 154(a)(1) (emphasis added). As both parties note, patent ownership may be transferred by assignment, and section 261 addresses such a transfer—requiring assignments to be in writing. <u>See</u> 35 U.S.C. § 261. However, there is nothing that limits assignment as the only means for transferring patent ownership. Indeed, the case law illustrates that ownership of a patent may be changed by operation of law.

Of particular relevance to the present case is <u>H.M. Stickle v. Heublein, Inc.</u>, 716 F.2d 1550 (Fed. Cir. 1983). In that case, the alleged infringer argued that the case should have been dismissed for the plaintiff's failure to establish that the named parties owned the entire right, title, and interest in the patents at issue. The district court was not moved by the infringer's argument, concluding that under Texas law title to the patents passed to the patent owner's heirs, the plaintiffs, upon his death. We agreed, noting that at the time of Stickle's (the patent owner) death Texas law provided that

---

from time of the commencement of the succession, to all the rights and duties pertaining to the estate of the [decedent] except as such are entirely personal." <u>Id.</u> at art. 896.

2007-1184                                    4

"'[w]hen a person dies, leaving a lawful will, all of his estate . . . bequeathed by such will . . . shall vest immediately in the . . . legatees of such estate . . . .'" Id. at 1558 (quoting V.A.T.S. Probate Code, § 37).[4] While the district court correctly observed that Stickle does not absolutely resolve the question at hand because it involves a written will that could fulfill the § 261 requirement, the case nonetheless supports the more relevant proposition that patent title may be transferred according to state probate law. See also Winkler v. Studebaker Bros. Mfg. Co., 105 F. 190-91 (C.C. S.D.N.Y. 1900) (stating "[u]nder the Indiana law, if there be no debts and no administration, personal property vests by operation of law in the next of kin. [citations omitted] This patent . . . was not administered and passed by operation of law to those legally entitled to it . . . .").

The district court relied primarily on the language of the statute—making the implicit, but unsupported, assumption that intestate succession is an "assignment"—and on two 19th-century cases: Shaw Relief Valve Co. v. City of New Bedford, 19 F. 753,

---

[4]     V.A.T.S. Probate Code, § 37 states:

When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate and the donees of such powers; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject, however, to the payment of the debts of the testator or intestate, except such as is exempted by law, and subject to the payment of court-ordered child support payments that are delinquent on the date of the person's death; and whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exception aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate and the delinquent child support payments; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with the law.

755 (C.C.D. Mass. 1884) and <u>Bradley v. Dull</u>, 19 F. 913 (C.C.W.D. Pa. 1884) (which simply apples <u>Shaw</u>). Those cases are neither binding on us nor helpful in the analysis. <u>Shaw Relief Valve</u> considered an 1870 amendment to the patent statutes that deleted the words "executors and administrators" from a section granting a patent to the patentee, "his heirs and assigns." 19 F. at 754. The <u>Shaw</u> court held that the omission of the phrase "executors and administrators" did not alter the ordinary rule that a patent, like any personal property, "follows the ordinary course, and goes to the executor or administrator in trust for the next of kin." <u>Id.</u> The court thus rejected the defendant's argument that a grant of title to the plaintiff by the administrator was invalid because the language of the patent statutes preempted ordinary probate law. <u>Id.</u> This has little bearing on the question at hand; it does <u>not</u> stand for the proposition that patent rights vest in an executor at death and until assigned in writing, but if anything supports the proposition that the question of when and to whom title is transferred is determined by state law.

Our case law is clear that state law, not federal law, typically governs patent ownership. <u>See</u> <u>Jim Arnold Corp. v. Hydrotech Sys., Inc.</u>, 109 F.3d 1567, 1572 (Fed. Cir. 1997) (stating "the question of who owns the patent rights and on what terms typically is a question exclusively for state courts"). Accordingly, we have looked to state law when determining ownership of the patent following a patent owner's death.

Applying this principle to the present case would require looking to foreign law, as opposed to state law, to determine ownership of the '716 patent—because Yasumasa was a resident of Japan at the time of his death. We addressed a similar issue in <u>International Nutrition Co. v. Horphag Research Ltd.</u>, 257 F.3d 1324 (Fed. Cir.

2001). In that case, a party argued that ownership of a United States patent is a matter of United States patent law and that granting comity based on a determination of ownership under French law would be contrary to United States patent law. Id. at 1329. After noting that patent ownership is typically a question of state law, not federal law, we explained that "[a] contractual agreement to apply French law as to ownership is just as valid as an agreement to apply the law of a particular state." Id. We discerned no conflict between United States patent law and enforcing the intentions of the parties that the contract be interpreted under the laws of a foreign country.

Similarly, we see no reason Japanese law should not control ownership of the '716 patent here. Indeed, the district court seems to agree with this principle, stating "Japanese law may determine who the '716 patent could be transferred to upon Yasumasa's death . . . ." Akazawa, No. SAVC 03-1474, slip op. at 5. Thus, interpreting Japanese intestacy law, not United States patent law, is the first step in determining whether Akira possessed standing to bring the present suit.

The evidence provided to us, specifically the translation of Japanese intestacy law, suggests that at the time of Yasumasa's death Hitomi, Yuki, and Fumi became owners of the '716 patent. Whether an administrator is required under Japanese law in this case, the role of such an administrator, and whether the existence of an administrator would affect the transfer of the patent to Yasumasa's heirs is less clear. See id. at 8-9 (stating that the district court offers "no opinion as to who the legal representative of Yasumasa's estate was or is under Japanese law, and need not decide the issue"). These issues are best decided by the district court in the first instance. See Merck & Co., Inc. v. U.S. Int'l. Trade Comm'n, 774 F.2d 483, 488 (Fed.

Cir. 1985) (holding that under Federal Rule of Civil Procedure 44.1 determinations of foreign law are matters for the district court in the first instance).

If the district court concludes that the '716 patent was transferred to Hitomi, Yuki, and Fumi upon Yasumasa's death, then the subsequent transfers between Yuki, Fumi, Hitomi, and Akira conveyed ownership of the '716 patent to Akira. If, however, the district court concludes that under Japanese law the '716 patent was transferred to the estate of Yasumasa which then fell under the control of an administrator or executor, a written assignment in accordance with § 261 may then be necessary to convey the patent from the estate to Yasumasa's heirs.

III

Issues of the interpretation of Japanese intestacy law must be decided in order to resolve this case. We vacate and remand so the district court can address these issues in the first instance.

VACATED and REMANDED

COSTS

No costs.